## In re WISE SHOES, Inc. *

District Court, S. D. New York.

Nov. 15, 1932.

*Order affirmed — F.(2d) —.

522

Pollock & Nemerov, of New York City (Henry W. Pollock, of New York City, of counsel), for Fifth Avenue Realty Corporation.

David W. Kahn and Nathan Friedman, both of New York City, for bankrupt.

PATTERSON, District Judge.

The claimant filed a claim for $1,711,390. The proof of claim shows that on January 18, 1927, the claimant leased to the bankrupt real estate at 384 Fifth Avenue, New York City, for a term of twenty-one years commencing May 1, 1928, at a rental of $100,000 a year, plus taxes and certain other charges. The bankrupt entered into possession at the agreed commencement of the term. Later it defaulted as to paying the first half of the 1932 taxes amounting to $11,390, and as to the rent due on May 1, 1932, in the amount of $8,333.33. It also defaulted in not giving to the landlord, on or before April 1, 1932, a surety company bond for $75,000 for the faithful performance of its covenants under the lease, the furnishing of such a bond being one of the bankrupt's engagements under the lease. Because of these defaults, the landlord in May, 1932, instituted summary proceedings culminating in the service of a warrant of dispossess prior to the filing of the petition in bankruptcy. The petition was filed on May 25, 1932.

A copy of the lease is annexed to the proof of claim. It has a clause that, if the tenant should fail to pay rent or should break any other covenant, then at the landlord's election the lease should terminate, the landlord might recover possession by summary proceedings, relet the premises for the tenant's account, and look to the tenant for the difference between the fixed rent for the residue of the original term and the rent realized on reletting to other parties.

Upon the above facts which appeared on the face of the proof of claim, the referee disallowed the claim, except for the figure of $19,725.33, which represents the unpaid rent and taxes due from the bankrupt prior to bankruptcy. The claimant assigns error in the disallowance of the balance, and particularly as to the disallowance of $75,000, the amount of the agreed bond. The bankrupt urges that the petition to review the referee's ruling was filed too late. But it appears that the referee had granted the claimant's motion for re-examination and had reconsidered the claim on the merits. The claimant's petition to review was filed within the prescribed time after the referee's final order on this motion. The correctness of the referee's disposition of the claim is therefore properly presented. There has been a composition in the case, and because of this feature it is the bankrupt that is objecting to the claim.

The provability in bankruptcy of landlord's claims growing out of leases of real es-

tate depends upon the status at the time of bankruptcy. The general rule is that a claim for future rent is not provable. The obligation on the rent covenant is "altogether contingent." In re Roth & Appel (C. C. A.) 181 F. 667, 31 L. R. A. (N. S.) 270; Watson v. Merrill (C. C. A.) 136 F. 359, 69 L. R. A. 719. Where the lease imposes upon the tenant the duty of making good to the landlord any loss in rents due to the tenant's default and subsequent reletting by the landlord, a claim for such loss is not provable in cases where the lease was still a subsisting one at the time of the tenant's bankruptcy. In re Roth & Appel, supra; In re Ells (D. C.) 98 F. 967; McDonnell v. Woods (C. C. A.) 298 F. 434. Such a claim is said to be too uncertain at the time of bankruptcy in two respects: First, as to whether the landlord will re-enter and thus terminate the lease; and, second, as to whether any loss in rents will actually come about. The second uncertainty or contingency is found also in cases like the present one, where the landlord had declared the lease terminated prior to bankruptcy but had not then relet the premises. It cannot be predicted at the time of bankruptcy whether there will be any loss. Hence it is held that in such a case a claim based upon the tenant's agreement to indemnify is not provable. In re Service Appliance Co. (D. C.) 39 F.(2d) 632, 636; In re Goldberg (D. C.) 52 F.(2d) 156; In re Hubbard (D. C.) 57 F.(2d) 213.

■ The three cases last cited are in point. Here the bankrupt had broken covenants in the lease and the landlord had re-entered prior to bankruptcy. The re-entry, however, had been effected only a few days before bankruptcy, and there had been no reletting by the landlord. Coincident with the re-entry, the bankrupt's liability for rent as to the future had been replaced by liability on its covenant to make good any deficiency between the rent received in the lease and the rent realized by the landlord over the residue of the original term which will expire on April 30, 1949. Matter of Hevenor, 144 N. Y. 271, 274, 39 N. E. 393; Cannon v. 56th Street Garage (C. C. A.) 45 F.(2d) 110. Whether there will be a deficiency will not be known until 1949. The law in New York is that, in the absence of clauses in the lease making the tenant liable for monthly or periodical deficits after the landlord's re-entry, the deficiency is to be determined only at the end of the original term. Until then there is no breach of the indemnity covenant and no cause of action against the tenant. Hermitage Co. v. Levine, 248 N. Y. 333, 162 N. E.

97, 59 A. L. R. 1015; Harding v. Austin, 93 App. Div. 564, 87 N. Y. S. 887; In re Service Appliance Co., supra. Here it was impossible at the time of bankruptcy to say whether there would be any deficiency over the next seventeen years taken as an entirety. Probably there will be a loss for some years, but who can say that any such loss will not be swallowed up in the later years of the term. In re Shaffer (D. C.) 124 F. 111. In Dunbar v. Dunbar, 190 U. S. 340, 350, 23 S. Ct. 757, 761, 47 L. Ed. 1084, the Supreme Court said: "We do not think that by the language in § 63a [11 USCA § 103] it was intended to permit proof of contingent debts or liabilities or demands the valuation or estimation of which it was substantially impossible to prove." See, also, Maynard v. Elliott, 283 U. S. 273, 278, 51 S. Ct. 390, 75 L. Ed. 1028; Riggin v. Magwire, 15 Wall. 549, 21 L. Ed. 232; In re Merrill & Baker (C. C. A.) 186 F. 312. The claim based upon the bankrupt's covenant to make good any deficiency in rents over the next seventeen years was a claim not capable of being valued, and for this reason was not provable.

The hopeless uncertainty of the claim is apparent on its face when the amount of the claim is considered. The claimant has filed for $1,711,390, which represents $100,000 a year for seventeen years, together with the $11,390 of unpaid taxes already accrued. The taxes for seventeen years are not added, although these are part of the fixed rent and form an important item in the claimant's favor, nor has any attempt been made to subtract anything for the rent to be procured from others. Both of these omissions are obviously due to the fact that these matters are not capable of estimate by the claimant or any one else.

■ The claimant insists that the referee should at least have allowed the claim for the amount of $75,000, representing the face amount of the surety bond which the bankrupt should have given some two months before bankruptcy. It is quite true that the bankrupt had covenanted to furnish such a bond and was already in default at the time of bankruptcy. But its breach in this regard did not establish a debt or claim provable in bankruptcy. To the extent that the missing bond would have been collateral security for a provable claim (in this case rent accrued and unpaid at the time of bankruptcy, for which figure the claimant's proof of claim has been allowed by the referee), it is evident that to allow a claim also for failure

524

to give bond would be to permit double proof on the same debt, contrary to the settled rule. First National Bank v. Eason (C. C. A.) 149 F. 204; John Matthews, Inc., v. Knickerbocker Trust Co. (C. C. A.) 192 F. 557; In re Battle Island Paper Co. (D. C.) 259 F. 921. To the extent that the bond would have been collateral security for a claim not provable because incapable of valuation (in this case the claim on the bankrupt's covenant to indemnify), it is plain that the claim based on failure to furnish the bond is likewise incapable of valuation. At the time of bankruptcy, it was sheer speculation whether there would be any deficiency of rents by 1949; therefore no value could be placed upon the failure to furnish the bond. Indeed, it is hard to conceive of any circumstances under which the breach by a bankrupt of an agreement to give a surety bond to secure his own primary obligation can give rise to a claim provable against his estate in bankruptcy.

The claimant relies on In re Mullings Clothing Co. (C. C. A.) 238 F. 58, L. R. A. 1918A, 539. That was a case presenting unusual facts, where the tenant had repudiated the lease before commencement of the term. The landlord's claim for damages was held provable. The Circuit Court of Appeals of this circuit has recently commented on the difficulty of reconciling that case with the rule in In re Roth & Appel, supra. See T. A. D. Jones Co. v. Winchester Repeating Arms Co., 61 F.(2d) 774, decided November 7, 1932. The Mullings Case must accordingly be deemed of doubtful authority at the present time. But, whatever its standing, it does not control the instant case, where the situation was quite different.

The referee was right in allowing the claim for rent and taxes overdue at the time of bankruptcy and in disallowing it for any greater sum. The order will therefore be affirmed.