**KORN et al. v. JOHNSON et al.**

**No. 3675.**

Court of Civil Appeals of Texas. El Paso.

May 19, 1938.

Rehearing Denied June 2, 1938.

Wm. H. Flippen, of Dallas, and Dan P. Johnston, of Fort Worth, for appellants.

W. C. Jackson, of Fort Stockton, for appellees.

NEALON, Chief Justice.

This case involves the interpretation of a contract of lease considered by us in W. D. Johnson et ux. v. Oskar Korn, E. Mollison et al. v. S. C. Johnson et ux., and Oskar Korn v. W. D. Johnson et ux., 117 S.W.2d 514, decided May 12, 1938. It also involves an interpretation of the order of the Master in Chancery in a bankruptcy case, which was also interpreted in our opinions in said causes. For the sake of brevity we adopt here, without restatement, except when unavoidable, the purport of the written contract involving the Alpine, Texas, Theater, as amended by said order of the Bankruptcy Court, stated in said decisions, as well as the covenants of the lessees by which they obligated themselves to carry insurance on said building.

In this suit Mrs. Lurline Johnson, joined by her husband, sought to recover of Oskar Korn and E. Mollison the sum of $1245.48, representing amounts paid as taxes and insurance premiums upon said building, which amounts plaintiffs claimed defendants were obligated to pay under their covenants. The suit was brought in Pecos County. Defendants filed pleas of privilege, and venue was changed to Brewster County.

Defendants pleaded general demurrer and general denial, and that the lease contract had been modified as to the obligations to pay taxes and insurance by virtue of the agreed order in the United States District Court, referred to in our opinions in the said Korn and Johnson Cases. By direction of the Court the jury returned a verdict in favor of the plaintiffs for $561.48, the amount of insurance paid. The trial court held that under the undisputed evidence plaintiffs were entitled to recover the amount paid for insurance, but not the amount paid for taxes. Plaintiffs and defendants excepted and gave notice of appeal, but only defendants prosecuted their appeal.

Opinion.

The question before us for determination is whether or not the decree entered in the Bankruptcy Court relieved appellants from the obligation to pay premiums upon the insurance carried upon the building. There is no ambiguity about the provisions of the original contract creating this obligation. This was not declared in that contract to be a part of the rental charge for the building. The obligation was created by separate and independent covenants, as was the obligation to pay city, county and state taxes. The order in the Bankruptcy Court, though it provided that future taxes upon the real estate should be paid by the lessor, made no mention of the obligation of the tenants to carry insurance in favor of lessors upon the building. The only provision with respect to insurance was the creation of an obligation upon the part of lessees to carry sufficient insurance upon furniture, fixtures and equipment to cover the outstanding indebtedness "due hereunder." The outstanding indebtedness then due, for which provision was being made, was "back rental" of $3000. The original contract did not obligate lessees to carry insurance upon the furniture, fixtures and equipment. Therefore, this clause has no relation to the general obligation to carry insurance which was undertaken in the lease as originally written. The agreed decree expressly provides that "in all other respects, except as herein stipulated and modified, the lease agreements at Fort Stockton and Alpine shall remain and control in every other respect." It is clear, then, that unless the insurance premiums as originally contracted were intended to be included within the term "rental," the obligation upon the part of the lessees to pay the premium was not disturbed by the agreement which was crystalized into a decree in the Bankruptcy case. Not all payments which by the terms of the lease a tenant is bound to make are included within the term "rent." There are decisions excluding therefrom agreements to pay taxes and costs of improvement. It is generally held that the term does not include the obligation to perform collateral contracts. Largely the matter must be determined by a fair construction of the contract. Where it is stipulated in the contract that such payments are to be treated as a part of the rent reserved, the interpretation of the contract involves no difficulty. In such cases the charge is part of the rent. How-

ever, in the instant case, a definite percentage of the original investment was prescribed as the rent charge. The obligation to pay insurance was not by the terms of the contract included within the meaning of the term rent. It was contained in separate and independent covenants, and though it was an obligation assumed by virtue of the tenancy, the language of the contract did not endow the sums thus paid with the character of rent any more than an obligation to make repairs would have given the cost thereof the same status. The agreement evidenced by the Bankruptcy's Court's order bears out the theory that the covenants to pay taxes and insurance on the premises were considered separate and independent covenants, and not as parts of the covenant to pay rent. Express mention and provision was made respecting the payment of future taxes upon the real estate. A definite sum was fixed as a charge for rent proper. Care was taken that the original contract should continue to subsist in its full integrity, except as changed by the agreed decree.

In the early case of Garner v. Hannah, 13 N.Y.Super.Ct. 262, in holding that taxes stipulated in a lease to be paid by a tenant do not constitute in law any portion of the "rent" reserved, the Court said:

"Rent has a fixed legal meaning, and to consider all payments which, by the terms of a lease, a tenant is bound to make, as coming within its definition, would lead to a confusion of ideas without necessity or advantage. It is said that the payment of taxes is part of the return made by the defendant to his landlord for the use of the property, and, therefore, properly comes under the definition of rent. But in one sense the performance of every covenant on the part of the lessee is a return made by the tenant for the use of the land. Yet it would hardly be contended that money stipulated to be expended in repairs or for insurance, or in the way of improvements, was any portion of the rent. * * Taxes are not, on that account, any more rent than the expenditure of money for insurance, under a covenant to that effect on the part of the lessee."

Other cases supporting in principle our views as expressed are Hodgkins v. Price, 137 Mass. 13, at page 19; Tungsten Co. v. Beach, Long Hill Quarries Co. v. Tungsten Co., 92 Conn. 519, 103 A. 632; Filene's Sons Co. v. Weed, 245 U.S. 597, 38 S.Ct. 211, 62 L.Ed. 497.

While we have found some, though not many, decisions holding that in the absence of an apparent contrary intent in the contract the express obligation to pay taxes will imply that they are to be paid as part of the rental charge, we have found none in which that rule is applied to payments for fire insurance. There is a valid reason for the distinction. In Taylor on Land and Tenant (Sec. 369, 9th Ed.) it is said that one of the "properties" of rent at common law is certainty. Though the amount of taxes to be assessed against a given property is somewhat uncertain, yet it approximates certainty more nearly than does the amount that may be required for insurance premiums. The former is fixed by an agency of government, is based upon the value of the property, and upon a rate limited by law. The latter is dependent in the last analysis upon the judgment of the representatives of private interests as to value, and, though a state agency fixes standards by which the rate is to be determined, it has no control over valuation; and even the rate is subject to fluctuation by reason of circumstances beyond the control of the parties or the State, such as good or bad local fire records, local equipment for fire prevention, exposures, the character of material used in nearby structures, and the like. Since the rule that payments for insurance are not to be considered as part of the rent ordinarily has been so positively declared and so long adhered to, we must assume that it was in the minds of the parties when they made their contract of lease and their amended contract evidenced by the order of the Bankruptcy Court.

In view of what has been said, it follows that all assignments of error must be overruled.

The judgment of the District Court is affirmed.